# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,

v.                                          Criminal No. 1:08-cr-10123-DJC

SERGIO AGUILAR-ALVAREZ,

Defendant.

_____

## MEMORANDUM AND ORDER

**CASPER, J.**                                          **December 7, 2015**

## I.      Introduction

Defendant Sergio Aguilar-Alvarez ("Aguilar") has filed a motion under 28 U.S.C. § 2255 to set aside and correct his ten-year mandatory minimum sentence for federal drug charges. D. 155. He contends that he suffered a violation of his Sixth Amendment right to counsel because his attorney Francisco Fernandez ("Fernandez") failed to pursue a lower sentence under the safety valve, 18 U.S.C. § 3553(f), which allows qualifying defendants to receive a sentence lower than the mandatory minimum. D. 156 at 11. For the reasons stated below, the Court DENIES Aguilar's motion.

## II.     Standard of Review

A prisoner may seek post-conviction relief under 28 U.S.C. § 2255 if his sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack. David v.

<u>United States</u>, 134 F.3d 470, 474 (1st Cir. 1998).  The petitioner bears the burden to make out a claim for § 2255 relief.  <u>Id.</u>

**III.     Factual History**

      **A.     <u>Investigation, Arrest and Plea</u>**

On February 11, 2009, Aguilar pled guilty to a two-count indictment charging him with (1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and (2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  D. 87 at 1.  The charges arose out of a long-term Drug Enforcement Administration investigation targeting one of Aguilar's co-defendants.  Presentence Report ("PSR") ¶¶ 4-6.  Aguilar's role was to contact different cocaine suppliers on his co-defendant's behalf to buy cocaine.  <u>Id.</u> ¶¶ 5, 36-45.  On April 20, 2008, state police stopped Aguilar and two co-defendants and found 30 kilograms of cocaine in one of their vehicles.  <u>Id.</u> ¶¶ 47-50.

Aguilar can speak and read Spanish, but cannot write in Spanish.  <u>Id.</u> ¶ 110.  At the time of his sentencing, he did not understand English, <u>id.</u>, but while currently incarcerated, he has taken some English classes along with classes in Spanish.  D. 158 ¶ 11.  He has never attended school.  PSR ¶ 110.  Because Aguilar was indigent, the court appointed Fernandez to represent him.  D. 30.  Fernandez is fluent in Spanish.  D. 158 ¶ 4.

Aguilar's offenses carried a ten-year mandatory minimum sentence.  PSR ¶ 122.  Based on his total offense level of 35, the Probation Office calculated Aguilar's guidelines sentencing range in the PSR as 168 to 210 months.  <u>Id.</u> ¶ 123.  In reaching this range, it applied a four-level role enhancement based on its assessment that Aguilar was a leader of an extensive criminal activity that involved five or more participants.  <u>Id.</u> ¶¶ 63-65.

The safety valve allows a defendant to receive a sentence below the mandatory minimum if he meets five conditions, including one that requires the defendant not be a leader in the offense. 18 U.S.C. § 3553(f). Because the Probation Office concluded that Aguilar was a leader, the PSR stated he was not eligible for safety valve relief. PSR ¶ 71. Fernandez objected to Probation's recommendation in the PSR that a role enhancement was warranted and that Aguilar was ineligible for the safety valve. Addendum to PSR at 33-34.

In June 2009, Fernandez filed Aguilar's sentencing memorandum. D. 81. Fernandez requested that the Court decline to apply any role enhancement. Id. at 1. He further argued that even if the Court were to apply a role enhancement, the Court should grant a variance and impose the ten-year minimum sentence. Id. at 2. Aguilar was "punished enough by any role enhancement" because that "alone . . . disqualified him from receiving the benefit of the 'safety valve' and a potential sentence below" the ten-year minimum. Id.

While Aguilar was in custody, he met with Fernandez five times. D. 158 ¶ 5. At one of those meetings, Aguilar asked Fernandez about the safety valve. Id. Fernandez told him that he could not qualify for safety valve relief because the government believed he had been a leader in the charged drug conspiracy. Id. To the best of Aguilar's recollection, this was the only occasion when Fernandez discussed the possibility of the safety valve with him. Id.

**B.**     **Sentencing Hearing**

On June 25, 2009, the Court held Aguilar's sentencing hearing. D. 146. Although the Probation Office calculated Aguilar's guidelines sentencing range to be 168 to 210 months based on a four-level role enhancement, the government argued that only a three-level role enhancement was warranted, resulting in a guideline range of 151 to 188 months. Id. at 4. But because Aguilar had no criminal record, the government recommended a sentence of 144

months.  Id.

Fernandez disputed Probation's calculation of the guidelines sentencing range because of the role enhancement.  D. 81 at 1.  Fernandez argued that Aguilar was not a leader, but a middleman.  D. 146 at 8-9.  If a role enhancement was necessary, Fernandez urged the Court to apply a two-level enhancement, which would create a low-end of 135 months, and then vary downward to the mandatory minimum and impose a sentence of 120 months.  Id. at 9-10.  He noted that "[b]ut for this issue over the role [Aguilar] would have qualified for a safety valve." Id. at 8.  Aguilar "never proffered himself due to the role issue, [which] we believe he would have qualified."  Id.

After hearing both sides' arguments and recommendations, the Court imposed Aguilar's sentence and initiated the following colloquy:

> THE COURT:  So I am going to sentence him to the ten years minimum mandatory.  And I am moved by the words that were written, that the sentence should be sufficient but not greater than necessary.  Okay.  So that is it.  What else?
>
> THE PROBATION OFFICER:  Your Honor, is that based on finding the two-level enhancement which would be the 135 to 168 range, so that I can complete the appropriate paperwork?
>
> MR. FERNANDEZ: I think she is suggesting if you're going to impose a role enhancement –
>
> THE COURT: No.
>
> THE PROBATION OFFICER: With no role enhancement his range would be 120 to 135.
>
> THE COURT: Yes, so I am giving him the minimum mandatory.

Id. at 11-12.  The Court thus sentenced Aguilar to the ten-year mandatory minimum.  Id. at 11. The probation officer sought clarification about the leadership enhancement and the Court responded it was not applying an enhancement.  Id. at 11-12.

In his affidavit, Aguilar asserts that he had "a very hard time" following what had occurred at the sentencing hearing and the interpreter had been "unable to explain the issues to me." D. 158 ¶ 6. Aguilar believed he had been sentenced as a leader and he did not understand the basis for his sentence. Id. After he had been sentenced, Aguilar spoke with Fernandez. Id. ¶ 7. Fernandez told him that because he had received the mandatory minimum, there was nothing for him to appeal. Id. Aguilar asserts that Fernandez "never explained" that he had not been sentenced as a leader. Id. He had no further contact with Fernandez after his sentencing. Id.

## IV.     Procedural History

Aguilar was sentenced on June 25, 2009. D. 87. He did not file a direct appeal. On December 17, 2014, Aguilar filed a *pro se* motion for modification or reduction of sentence under 18 U.S.C. § 3582(c)(2) based on changes to the sentencing guidelines that lowered base offense levels for certain drug quantities. D. 137. Soon thereafter, in January 2015, the Court appointed his current attorneys to represent him. D. 141; D. 142. In February 2015, the Court denied Aguilar's motion because he was not eligible for a sentence reduction. D. 149. On May 26, 2015, Aguilar filed the instant § 2255 petition. D. 155. The Court heard argument on the motion on October 20, 2015 and took the matter under advisement. D. 176.

## V.     Discussion

### A.     Aguilar's Petition is Untimely

"Congress enacted 28 U.S.C. § 2255 as a substitute for the traditional habeas remedy with respect to federal prisoners." Ramos-Martínez v. United States, 638 F.3d 315, 320 (1st Cir. 2011) (quoting Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008)) (internal quotation marks omitted). Under § 2255(f), a habeas corpus petition filed by a prisoner in federal custody

is subject to a one-year statute of limitations period that runs from the latest of four possible dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S. § 2255(f).  Aguilar did not file his petition until six years after his sentencing.  As a result, he argues that because he did not discover that he was not sentenced as a leader until January 2015, his petition is timely under § 2255(f)(4).  D. 156 at 20; D. 163 at 5.

An analogous provision to § 2255(f)(4) exists for habeas petitions filed by state prisoners. That provision, 28 U.S.C. § 2244(d)(1)(D), provides that the one-year statute of limitations period for 28 U.S.C. § 2254 petitions can run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The First Circuit has held that § 2244(d)(1)(D) refers to the discovery of "evidentiary facts or events," not "court rulings or legal consequences of the facts."  Holmes v. Spencer, 685 F.3d 51, 59 (1st Cir. 2012)) (internal quotation marks and citation omitted); see Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1155 (11th Cir. 2014) (stating that "[c]onclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim") (citation and internal quotation mark omitted).

The same holds true for § 2255(f)(4).  Courts have often "construed the statutes of

limitations of § 2254 and § 2255 [petitions] similarly given 'the compelling textual similarity and congruent purpose that section 2244(d) and 2255(f) share and the common heritage of both provisions as part of the same statutory framework.'" Collado v. United States, No. 03-cr-10404-PBS, 2013 WL 3943522, at *2 n.1 (D. Mass. July 29, 2013) (quoting Ramos-Martínez, 638 F.3d at 321-22). Thus, under § 2255(f)(4), time runs not from when the prisoner discovers the legal consequences of the facts supporting his claim but from when the prisoner "could reasonably have discovered th[e] underlying facts themselves." Id. at *2. The date when a prisoner understands what legal theories are available does not constitute "the date on which the factual predicate . . . could have been discovered." Barreto-Barreto v. United States, 551 F.3d 95, 99 n.4 (1st Cir. 2008) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)) (internal quotation marks omitted); see United States v. Pollard, 416 F.3d 48, 55 (D.C. Cir. 2005) (rejecting prisoner's argument that his petition was timely under § 2255(f)(4) because "[w]hether an attorney should have performed a particular task drives the *legal* inquiry into the existence of an ineffective-assistance-of-counsel claim") (emphasis in original).

1.      *Holmes* Instructs that Newly Discovered Legal Consequences of Existing Facts Cannot Save an Untimely Habeas Petition

The application of this rule dooms Aguilar's claim. The First Circuit opinion in Holmes is particularly instructive. There, a defendant was charged with first-degree murder. Holmes, 685 F.3d at 53. In May 1998, the defendant pled guilty to second-degree murder and the court sentenced him to life in prison, the mandatory sentence. Id. A month later, the defendant filed a motion under Mass. R. Crim. P. 29 ("Rule 29") to revise his sentence. Id. at 54.

Approximately ten years later, the defendant filed a habeas corpus petition under 28 U.S.C. § 2254 claiming ineffective assistance of counsel. Id. at 55. The defendant claimed that he had pled guilty because his attorney had erroneously assured him that he would be able to

7

reduce his sentence under Rule 29 afterward.  Id.  His Rule 29 motion, however, was futile because second-degree murder carried a mandatory life sentence and the trial judge had no authority to revise or revoke his sentence.  Id. at 54.  The defendant did not discover that his attorney's advice was flawed until summer 2000, through his own legal research.  Id.  Much of the time between his plea and his habeas filing was excluded on other grounds, but the defendant still needed to exclude at least twenty-two of the remaining thirty-four months for his petition to be considered timely.  Id. at 57.  He thus sought relief under § 2244(d)(1)(D).  Id. at 58-59.  He argued that he could not have discovered through due diligence the factual basis of his habeas claim—that his attorney's Rule 29 advice was erroneous—until summer 2000.  Id. at 56, 58-59.

The First Circuit rejected his reasoning.  Id. at 59.  Section 2244(d)(1)(D) refers to facts or events, not the "legal consequences of th[ose] facts."  Id. (citation and internal quotation mark omitted).  "Here, [the defendant] claims that [his attorney's] strategy to enter a guilty plea and file a Rule 29 motion was constitutionally deficient."  Id.  "The principal facts upon which this claim is predicated—that [the defendant] originally intended to go to trial; that his attorney instead convinced him to plead guilty; and that this course of action was influenced by his expectation of a subsequent sentence reduction—were known, at the latest, by the date of his conviction" in May 1998.  Id.  "That this advice may have been flawed, and could potentially form the foundation for an ineffective assistance claim, are the legal consequences of those facts—matters of law that are beyond the purview of § 2244(d)(1)(D)."  Id.  Although the defendant's discovery that his attorney's advice was allegedly misleading was "unfortunate," it was ultimately "unavailing" under § 2244(d)(1)(D).  Id.

Aguilar's situation is similar.  The safety valve statute provides that a court must impose a sentence without regard to the mandatory minimum sentence if it finds that the following

criteria are met:  (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily harm; (4) the defendant was not a leader in the offense; and (5) the defendant truthfully provided to the government, no later than the time of the sentencing hearing, all information and evidence that the defendant had concerning the offense. 18 U.S.C. § 3553(f)(1)-(5).  Aguilar argues that Fernandez prevented him from making a proffer to the government before his sentencing (a fulfillment of the fifth requirement) because Fernandez believed Aguilar was already ineligible due to the government's position that Aguilar had been a leader (a disqualification under the fourth requirement).  D. 156 at 12.  As Aguilar contends, Fernandez's decision not to pursue a proffer session was an "obvious, inexcusable legal error" that violated his Sixth Amendment rights.  Id.  Fernandez should have realized that "[a]s a matter of law" it is the district court, not the government, that must make "an independent factual determination as to whether Aguilar was eligible for safety valve relief—including whether Aguilar satisfied the fourth requirement that he not be a leader in the offense."  Id. at 13. Aguilar argues his petition is thus timely because he did not know Fernandez's representation was deficient until his new counsel told him.  Id. at 25.

Holmes rejected this type of argument under § 2244(d)(1)(D) and its logic applies under § 2255(f)(4) as well.  Both the Holmes defendant and Aguilar here claim that their respective legal representation was constitutionally deficient.  In Holmes, 685 F.3d at 59, the attorney failed to advise his client properly because he allegedly did not know that any Rule 29 motion would have been futile.  Here, Fernandez failed to facilitate a proffer under the safety valve provision because he allegedly did not know that the government's position on Aguilar's leadership role was not fatal to any claim to the safety valve.  D. 156 at 13-14.  Yet like in Holmes, the

"principal facts upon which [Aguilar's] claim is predicated"—that Aguilar would have willingly and truthfully proffered what he knew to the government, that Fernandez decided against having Aguilar make a proffer before his sentencing and that Fernandez's actions were based on an allegedly erroneous assumption—"were known, at the latest," by Aguilar's sentencing on June 25, 2009.  Holmes, 685 F.3d at 59.

That Fernandez's representation "may have been flawed, and could potentially form the foundation for an ineffective assistance claim," are "legal consequences of those facts," not the facts themselves.  Id.  The Holmes attorney's ignorance about Rule 29 motions was not a factual matter under § 2244(d)(1)(D) but a matter of law beyond that statute's scope.  So too here. Fernandez's ignorance about the effect of the government's position on Aguilar's leadership role is not a factual matter under § 2255(f)(4), but as Aguilar himself characterizes, a "legal error" beyond the scope of § 2255(f)(4).  D. 156 at 12.

> 2. *Even If the Fact under Consideration for § 2255(f)(4) is the Court's Finding at Sentencing that Aguilar Was Not a Leader, Aguilar's Petition Remains Untimely*

To avoid Holmes, Aguilar insists that whether his petition is timely turns on a factual issue:  when he could have discovered through the exercise of due diligence that the Court had not sentenced him as a leader.  D. 156 at 24.  Aguilar does not deny that the Court explained at his sentencing that he was not sentenced as a leader.  D. 156 at 23.   He characterizes, however, the Court's explanation as an "afterthought."  Id.  He faults the "rapid, shorthand exchange" between the court, counsel and probation on his leadership role, the interpreter and his language barrier, factors that he insists should be considered in determining due diligence.  Id.  He also argues that because Fernandez told him there were no issues to appeal, yet did not tell him that

he had not been sentenced as a leader, the earliest time due diligence could have revealed this fact was when he received current counsel in 2015.  Id. at 24.

Even if the basis of Aguilar's ineffective assistance claim is not Fernandez's failure to facilitate a proffer but the fact that the Court rejected the government's position as to his leadership role at sentencing, Aguilar's petition is still untimely.  Under § 2255(f)(4), a petitioner bears the burden to show that he acted with due diligence.  Rossetti v. United States, 773 F.3d 322, 332 (1st Cir. 2014); Jefferson v. United States, 730 F.3d 537, 544 (6th Cir. 2013).  Due diligence does not require "the maximum feasible diligence nor the undertaking of repeated exercises in futility."  Trucchio v. United States, 553 F. App'x 862, 863 (11th Cir. 2014) (internal quotation marks omitted).  It does, however, require that the prisoner "make 'reasonable efforts' in discovering the factual predicate of his claim."  Id. (quoting Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002)).  The court's inquiry is "an individualized one that must take into account the conditions of confinement and the reality of the prison system."  Id. (quoting Aron, 291 F.3d at 712) (internal quotation mark omitted).  Yet pro se representation or procedural ignorance, even by counsel, is insufficient to excuse a petitioner's prolonged delay in discovering the factual basis for his claim.  Johnson v. United States, 544 U.S. 295, 311 (2005) (concluding that prisoner was not reasonably diligent under § 2255, despite his explanation that he was acting pro se and lacked the sophistication to understand the procedures); Rossetti, 773 F.3d at 333 (concluding that "procedural ignorance by counsel" could not excuse prisoner's lack of diligence under § 2255).

Although courts have recognized that a language obstacle can be a relevant factor in

certain instances when assessing timeliness, due diligence is still required.[1]  See, e.g., Ruiz v. United States, 221 F. Supp. 2d 66, 77 (D. Mass. 2002) (concluding that petitioner did not exercise due diligence even though petitioner "was acting *pro se* and without knowledge of the law," "working in English rather than Spanish, his native tongue" and "[had] searched industriously for evidence in many other places before making the FOIA request"), aff'd, 339 F.3d 39 (1st Cir. 2003).  The diligence requirement places "a substantial obligation" on the prisoner "to make all reasonable efforts to obtain assistance to mitigate his language deficiency." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008).  With "no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement," prisoners cannot establish due diligence.  Id.; see Yang v. Archuleta, 525 F.3d 925, 930 (10th Cir. 2008) (rejecting equitable tolling for prisoner who lacked legal materials in his native language because he did not set forth what actions he pursued "to secure assistance with his language barrier inside or outside prison boundaries"); Berroa Santana v. United States, 939 F. Supp. 2d 109, 115 (D.P.R. 2013) (concluding that the petition was time-barred because there was no showing of due diligence and noting that while the court was not ignoring the petitioner's inability to read or write English, it "taxes credulity to believe that there were no bilingual inmates, nor correctional personnel nor inmate law clerks, or jailhouse lawyers" that could have assisted the petitioner); Torres-Santiago v. United States, 865 F. Supp. 2d 168, 177 (D.P.R. 2012) (refusing to grant equitable tolling to a

---

[1] As Aguilar notes, courts have typically addressed language obstacles when considering whether a petitioner should benefit from equitable tolling. D. 163 at 7 n.3.  The Court, however, agrees with Aguilar that those cases have relevance here "because both the equitable tolling standard and § 2255(f)(4) require a court to examine whether a petitioner has acted diligently in light of the petitioner's individual circumstances." Id.

Spanish-speaking petitioner because he "should have been more diligent at requesting assistance—whether to a fellow inmate, his former counsels, a prison guard, or the Clerk of the Court").

Due diligence is "an inexact measure of how much delay is too much," but § 2255 embodies a "clear policy [that] calls for promptness." Johnson, 544 U.S. at 309 n. 7, 311. On this record, the Court concludes that even with all of his individual characteristics in mind, Aguilar falls short of showing "reasonable diligence" here. Id. at 311. Even if the sentencing proceeding "went by quickly" and the interpreter "was unable to explain the issues" to Aguilar, D. 158 ¶ 6, those factors might reasonably explain why Aguilar could have missed the importance of his sentencing that day or at least sooner thereafter. They do not explain why Aguilar could not have discovered through due diligence the relevant facts supporting his motion until early 2015.

Here, an exercise of due diligence could have uncovered much earlier that Aguilar was not sentenced as a leader. A review of Aguilar's sentencing transcript confirms the government's contention that the key issue before the Court that day was whether it should apply a leadership adjustment under the guidelines. See, e.g., D. 146 at 3 (government stating it wanted to "address the role in the offense issue first since it drives I think the sentence"). The PSR recommended a four-level role enhancement, while the government sought one level lower. Id. On the other hand, Fernandez, on Aguilar's behalf, urged no enhancement, but proffered the alternative of a two-level enhancement with a variance to a ten-year mandatory minimum sentence, if the Court found a role enhancement necessary. Id. at 8-10. To underscore his argument, Fernandez stressed that the parties' dispute over Aguilar's role was the only reason why he did not qualify for safety valve relief. Id. at 8. After both sides made their respective

arguments and sentencing recommendations, the Court ruled that it was sentencing Aguilar to the statutory ten-year minimum.  Id. at 11.  The Court did not initially explain how it had resolved the role-enhancement dispute, but after prompt inquiry from the probation officer, the Court explained that it was not applying a role enhancement.  Id. at 11-12.  Then, four days after the sentencing hearing, the Court entered judgment, adopting the PSR with one change: "[n]o role in the offense."  D. 87 at 7.

Aguilar's affidavit contains no description of any effort to discover that he had not been sentenced as a leader.  See, e.g., Barreto-Barreto, 551 F.3d at 101 (concluding that petitions were time-barred because prisoners provided "no explanation" why they could not have diligently filed their petitions on time); Cordle v. Guarino, 428 F.3d 46, 49 (1st Cir. 2005) (affirming that the petition was time-barred where the prisoner did not present "any evidence tending to show that she was diligent in pursuing her rights" and "ignorance of the law alone, even for incarcerated *pro se* prisoners, does not excuse an untimely habeas filing") (citation, internal quotation marks and brackets omitted).  The absence of such efforts is particularly notable here where the very core of his sentencing hearing focused on the nature of his leadership role.

It is also a stark contrast to where Aguilar explains the diligent efforts he has exercised as to other matters in his case.  He asserts that he first learned, before he was sentenced, how the safety valve provision might help him from "other prison inmates" and then asked Fernandez to explain the provision to him.  D. 158 ¶ 5.  Similarly, Aguilar alleges that he filed a *pro se* motion for a modification or reduction of his sentence under 18 U.S.C. § 3582(c)(2) in December 2014 after a fellow inmate told him about "the possible sentence reduction [he] could obtain," "helped draft the motion" and "translated the motion into Spanish" so Aguilar could understand it.  Id. ¶ 9.  To conclude that Aguilar could not have discovered sooner through due diligence that the

Court had not sentenced him as a leader, even as he simultaneously learned from other inmates about other post-conviction relief despite his limited language skills, would be incongruous.

Not surprisingly, even in the cases that Aguilar cites where a language barrier posed an issue, D. 163 at 7, the prisoners there either faced far more difficult issues or demonstrated greater effort. In <u>Ramos-Martínez</u>, 638 F.3d at 326, the First Circuit directed the lower court to hold an evidentiary hearing to determine whether equitable tolling should apply because the record was incomplete. Although the prisoner had a limited education and was unfamiliar with English, he had made "some efforts both to file a petition and to keep tabs as to what progress was being made." <u>Id.</u> at 324. In <u>Baldayaque v. United States</u>, 338 F.3d 145, 152-53 (2d Cir. 2003), the Second Circuit concluded that due to "egregious" conduct by the prisoner's attorney, including violating multiple rules of professional conduct, refusing to file a § 2255 motion despite being told to do so and failing to locate, speak or meet with his client at all, equitable tolling could apply as long as the district court on remand concluded that the prisoner—who filed two *pro se* § 2255 motions when his attorney took no action—was reasonably diligent. Similarly, in <u>Montenegro v. United States</u>, 191 F.3d 456, 1999 WL 680253, at *1-2 (7th Cir. 1999) (table), the Seventh Circuit remanded for an evidentiary hearing because it was "impossible to tell" from the "sparse" record whether the prisoner, who spoke almost no English, had met the due diligence standard. When the case went back up on appeal, the Seventh Circuit affirmed the lower court's finding that the prisoner had not been diligent. <u>Montenegro v. United States</u>, 248 F.3d 585, 593 (7th Cir. 2001), <u>overruled on other grounds by</u> <u>Ashley v. United States</u>, 266 F.3d 671 (7th Cir. 2001). Despite the prisoner's language barrier, the Seventh Circuit agreed that due diligence would have revealed the relevant facts sooner, particularly because the prisoner never called or wrote to his attorney about an appeal and he had received a docket sheet

that should have revealed to him that no appeal was filed.[2]  Id. at 589-90, 592-93.

### B.    Aguilar is Not Entitled to Equitable Tolling

In a footnote in his brief, Aguilar argues that even if § 2255(f)(4) does not apply, the one-year limitations period should be equitably tolled.  D. 156 at 25.  Although courts in the First Circuit have "held that arguments raised only in a footnote or in a perfunctory manner are waived," Mogel v. UNUM Life Ins. Co. of Am., 646 F. Supp. 2d 177, 185 (D. Mass. 2009) (quoting Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999)) (internal quotation mark omitted), the Court will address this argument.

In Holland v. Florida, 560 U.S. 631, 645 (2010), the Supreme Court held that § 2244(d) can be subject to equitable tolling "in appropriate cases."  Based on Holland's reasoning and the "compelling textual similarity and congruent purpose" that § 2244(d) and § 2255(f) share, the First Circuit held that the one-year limitations period under § 2255(f) can also be subject to equitable tolling "in appropriate instances."  Ramos-Martínez, 638 F.3d at 322.

The First Circuit, however, warned that equitable tolling should be used "sparingly."  Id. at 322 (internal citations and quotation marks omitted).  Its application is limited to "rare and exceptional cases."  Holmes, 685 F.3d at 62.  The prisoner bears the burden of establishing the basis for equitable tolling.  Ramos-Martínez, 638 F.3d at 323.  He must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  Id. (quoting Holland, 560 U.S. at 649) (internal quotation marks omitted).  An analysis of both requirements "depend[s] on the totality of the

---

[2] Aguilar's reliance upon United States v. Mercedes-De La Cruz, 787 F.3d 61 (1st Cir. 2015) does not compel a different result where that case was not concerned with the due diligence that is required to be shown under § 2255(f)(4), but the district court's reliance upon perceived inaccuracies in the allocution of a defendant with limited proficiency in English in determining his sentence.

circumstances." <u>Id.</u> at 324.   The statute of limitations will not be equitably tolled "merely because the underlying grounds for habeas relief are extraordinary; rather, the 'extraordinary circumstance' must be one that actually *caused* the untimely filing." <u>Holmes</u>, 685 F.3d at 62 (emphasis in original).   Aguilar cannot benefit from equitable tolling because, for the reasons discussed above, this Court cannot conclude that he has shown due diligence in  pursuing this matter.

Nor can Aguilar demonstrate extraordinary circumstances.  A petitioner's "ignorance of the law or unfamiliarity with the legal process will not excuse his untimely filing, nor will a lack of representation during the applicable filing period." <u>United States v. Cicero</u>, 214 F.3d 199, 203, 204 (D.C. Cir. 2000) (holding that although the petitioner's work was "interrupted" by a stabbing, protective segregation and a two-month separation from his papers, he did not "present[] such 'extraordinary circumstances'" to warrant equitable tolling).   Impediments typically faced by prisoners also do not trigger equitable tolling. <u>Holmes</u>, 685 F.3d at 62-63 (holding that a petitioner who "was incarcerated, had no prior legal training, and received limited access to the prison's purportedly scant selection of legal resources" did not demonstrate extraordinary circumstances because he did not "differentiate his conditions of imprisonment from those of any other inmate").   And while a court may consider a petitioner's limited education and lack of familiarity with the English language when analyzing the totality of his circumstances, <u>Ramos-Martínez</u>, 638 F.3d at 324, courts have held that a petitioner's limited English proficiency is an extraordinary circumstance for equitable tolling purposes "only when the petitioner faced other obstacles related to his or her linguistic difficulties." <u>See, e.g.</u>, <u>Roldan v. Reilley</u>, No. 13-cv-447-PB, 2014 WL 3573596, at *3 & n.4 (D.N.H. July 21, 2014) (collecting cases and noting that some circuits have even concluded that limited English proficiency is never

an extraordinary circumstance).  Here, Aguilar has failed to identify other obstacles tied to his language barrier and has done so against a backdrop in which he was able to overcome that barrier and pursue and file other filings in this matter, albeit with assistance from fellow inmates.

Accordingly, the Court declines to apply equitable tolling.  Because the Court concludes that Aguilar's petition is untimely, it need not turn to address whether Fernandez's representation was ineffective.  See, e.g., United States v. Phillips, 44 F. App'x 353, 354 (10th Cir. 2002) (stating that "[b]ecause we find Mr. Phillips's § 2255 motion untimely, we decline to address the other issues he seeks to raise in this appeal"); United States v. Ahmad Bey, No. 04-cr-950-RRP, 2011 WL 4916347, at *3 (N.D. Ill. Oct. 17, 2011) (stating that "[b]ecause the court deems the § 2255 petition untimely, it declines to address Ahmad Bey's arguments on the merits").[3]

## VI.      Conclusion

For the foregoing reasons, the Court DENIES Aguilar's motion under § 2255, D. 155.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] In his papers, Aguilar sought as alternative relief an evidentiary hearing to resolve any factual questions relevant to this motion.  D. 156 at 25.  At oral argument, Aguilar's counsel clarified that an evidentiary hearing was not necessarily required, but that both issues—timeliness and ineffective assistance of counsel—could be resolved on the papers.  A petitioner "is not entitled to an evidentiary hearing as a matter of right."  David v. United States, 134 F.3d 470, 477 (1st Cir. 1998).  An evidentiary hearing is "the exception, not the norm," and the petitioner bears the burden of establishing its need.  DeCologero v. United States, 802 F.3d 155, 167 (1st Cir. 2015) (internal quotation mark omitted).  A district court may forgo a hearing when "the movant's allegations, even if true, do not entitle him to relief."  David, 134 F.3d at 477.  Such is the case here.